Steven Michael HOLMES, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–9311–CR–01256.

Supreme Court of Indiana.

Nov. 15, 1994.

DeBruler, J., filed dissenting opinion in which Sullivan, J., concurred.

Sullivan, J., concurred and dissented without separate opinion.

Walter E. Bravard, Jr., Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., for appellee.

GIVAN, Justice.

Appellant was tried by jury and convicted of two counts of Murder and one count of Attempted Robbery. The State sought the death penalty in this case; however, the jury recommended against its imposition. Appellant received sixty (60) years for each Murder count and twenty (20) years for Attempted Robbery, the terms to run consecutively.

The facts are: On August 25, 1992, nine-year-old Katie Holmes and her three-year-old brother David were at home watching television with their parents, Michael and Linda Holmes, when their brother, appellant, entered the home armed with a .22 caliber rifle. Appellant proceeded to demand money from his parents to which his father attempted to comply. When his father stood up, appellant began shooting at both parents. He then left the scene, leaving Katie and David alone with their dying parents.

A forensic pathologist, Dr. Amy Llewellyn, testified that both Michael and Linda Holmes died from gunshot wounds. Linda suffered one gunshot wound to the back of her head, three gunshot wounds to her back, and a fifth gunshot wound to her abdomen. Michael suffered one gunshot wound to the head and two gunshot wounds to his upper back.

At the scene of the crime, the police discovered several spent .22 caliber casings on the living room floor, a .22 caliber semiautomatic rifle outside a side door, and a bag containing a stun gun, bullets, a knife, and rubbing alcohol in the yard of a nearby house. The police also obtained fingerprints from the gun and other articles found at the scene. It was later determined that the fingerprints obtained at the crime scene matched those of appellant, and the bullets removed from the victims came from the .22 caliber rifle found at the crime scene.

Later, Indianapolis Police Detective David Burke *Mirandized* appellant and interviewed him at which time he informed the police that he planned to kill his parents. He also admitted he intentionally shot them.

Appellant claims his sentences are unreasonable because they are supported by improper aggravating factors.

The trial court's sentencing statement consists of the following:

"Mitigating circumstance is the jury did not make the recommendation that Mr. Holmes receive the death penalty. Aggravating circumstances, numerous. Mr. Holmes killed his parents. And, he did it in front of a 9 year old sister, who is severely traumatized, was then, is now. I don't know how long that's going to last; I pray for her. Shot his father 3 times. His mother, 5, in the back, the mother. This happened in August, '92. Purchased, I guess you call it an "attack rifle," semi-automatic rifle, in April. While he was only sporadically employed he had the ability to go practice firing on the firing range, practice assembling and dis-assembling the weapon. And, that, of course, is the kind of weapon that has no other use. It's not a target weapon. It's not a self-defense weapon. It's a weapon that has to be put together. Of course he had his bag with him that night, had the stun gun; that was for any neighbors that might hear the shots, when he's killing his parents. Had a knife in the bag, 151 rounds of ammunition. Mr. Holmes had attacked his father before, kicked him in the crotch, physically attacked his mother before also. Punched her in the stomach when she was noticeably pregnant, and everyone around her knew that she was pregnant. His sister Amy woke up one night and there he was with his hands on her throat, and knife in his other hand. Set the residence on fire; I believe it was Super Bowl Sunday, one year. He punched Amy, threatened to rape and kill her. Amy testified before this court that he had told her he would shoot his father and mother; and he told her that about a dozen times in the year and half, to 2 years before he in fact did kill them. Called Amy from jail, threatened to have her and Katie killed if Amy testified. On the way to kill his parents he went by Hamaker's Pharmacy. Of course he still had the rifle dissembled; it was still in 2 parts in his gym [bag]. But, there were a couple of Uniforms standing by the Village Pantry, so he headed over to 48th and Park. Started back to Hamaker's through, but the rifle jammed; he was going to kill a couple of people there. Took notes, kept a notebook, drew a diagram of the place, tells us later, and by his letter attached to the Presentence, that he did that later. I suppose I could go on with some other aggravators. What I'm trying to tell you, Mr. Holmes, is that you told Mr. Commons when he asked you that question; you told him that you deserved the maximum sentence. And, I've just reiterated a few for you, why that's what you're going to receive. Dr. Lennon and others told us that Mr. Holmes doesn't have a conscience, although now on Sentencing day there is a telling of remorse and sorrow. At any rate, sentence on Count I, sixty (60) years. Sentence on Count II is sixty (60) years. Sentence on Attempt Robbery, which was given to the Jury as Count II; it actually was the 5th Count, as they were originally tendered to the Court. The "A" has to be reduced for the reasons, that I believe Mr. Martenet said, that it's the same injury. Sentences are ordered served consecutively." (record 574–578)

Appellant claims the act of murdering his parents in the presence of his nine-year-old sister was relied upon by the State in establishing an element of the murder. Thus, it was improper for the court to use this factor as an aggravator when it was an element proved by the State to establish murder, citing *Bewley v. State* (1991), Ind.App., 572 N.E.2d 541.

■ It is well settled that a trial court may not treat an element of the offense as an aggravating factor. However, in the instant case, the trial court did not cite the murder element of killing as an aggravator. Rather, the court cited the fact that the victims in this case were appellant's parents and that the shootings were witnessed by appellant's nine-year-old sister which resulted in her experiencing severe psychological trauma. In no way was the presence of the nine-year-old girl an element of the murder. We find nothing improper in the manner in which the trial court utilized the aggravating factors.

■ Appellant claims the trial court erred by imposing enhanced sentences when they

were based on a recitation of statutory language and conclusory statements. In *Erby v. State* (1987), Ind., 511 N.E.2d 302, this Court held that a mere recitation of the statutory language is insufficient to support an enhanced sentence. In *Erby*, the trial judge, in adding five years to the presumptive term, stated:

"Your sentence is enhanced because of your prior criminal history, because of the serious nature of the crime, because it is felt that not to enhance the sentence would serve to depreciate the seriousness of the crime."

The Court reasoned that the statement was nothing more nor less than a list of the general categories from the statute and it lacked the required degree of specificity which contemplates the inclusion of particular facts and circumstances.

Unlike *Erby*, the trial judge's sentencing statement in the instant case is well-grounded in the specific facts and circumstances surrounding appellant's case. Further, the aggravating factors were explained in a way that we would not describe as conclusory. We find no merit to appellant's claim that the sentencing statement was a mere recitation of statutory language.

■ Appellant claims the trial court erred by imposing consecutive sentences when they were not supported by specific facts from the crimes. In reaching the determination that the sentences should run consecutive, the trial judge utilized the same facts that supported his decision to enhance the sentences. These facts were specific to appellant's case and not merely a recitation of statutory language. There is no constitutional or statutory prohibition against using the same factors to enhance the sentences and to impose consecutive sentences. *McCollum v. State* (1991), Ind., 582 N.E.2d 804. It follows that the facts were sufficient to support the imposition of the consecutive sentences.

■ Appellant also claims his sentence is manifestly unreasonable. This Court has held that a sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for which it was imposed. *Ferrell v. State* (1991), Ind., 565 N.E.2d 1070. The decision to increase or decrease a sentence is within the discretion of the trial court and will not be set aside unless it is manifestly unreasonable. *Ellis v. State* (1991), Ind., 567 N.E.2d 1142.

■ The trial judge adequately set forth the aggravating factors and the sole mitigating factor in this case. The trial judge was in the best position to determine these factors and the weight to be afforded them. We will not usurp his prerogative.

In light of the heinous nature of the offenses and the appropriate weight afforded the aggravating factors by the trial judge, we are unable to find that a reasonable person would dispute the propriety of the trial court's decision. *Johnston v. State* (1991), Ind., 578 N.E.2d 656; *Parrish v. State* (1987), Ind., 515 N.E.2d 516. The trial court's sentence was not unreasonable.

Appellant claims that his imposed sentences deny him an opportunity for rehabilitation and reformation and are excessive in violation of Article I, Section 18 and Section 16 of the Indiana Constitution, respectively. While the trial judge sentenced appellant to enhanced time on all three counts to run consecutively, the sentence falls within the parameters of the applicable statutes. We will not set aside the sentence unless it is manifestly unreasonable. *Ellis, supra.* As stated above, the sentence was not unreasonable. Accordingly, we are unable to conclude that the penalty imposed upon appellant was violative of Article 1, Section 16 & 18 of the Indiana Constitution.

The trial court is affirmed.

SHEPARD, C.J., and DICKSON, J., concur.

DeBRULER, J., dissents with separate opinion in which SULLIVAN, J., concurs.

SULLIVAN, J., concurs and dissents without separate opinion.

DeBRULER, Justice, dissenting.

Appellant had just turned eighteen when he shot and killed his parents. He had only recently been placed by them in his own

apartment and had returned to the home to rob and kill them. After the killing he did not take anything. These killings were the product of an irrational anger. As demonstrated by the presentence report, appellant had a long history of psychiatric problems and a pattern of violent behavior. After the killings, which had taken place before a witness, he returned to his apartment and remained there for a short while until he was arrested. He cooperated with the police, providing a full confession. The trial court did not consider these mitigating circumstances, though they are clearly supported by the record. The trial court focused solely upon aggravating circumstances, and concluded that the sole mitigating circumstance was "the jury did not make the recommendation that Mr. Holmes receive the death penalty." This does not satisfy the specificity requirement for sentencing orders. *Page v. State* (1981), Ind., 424 N.E.2d 1021. In my view, maximum consecutive sentences here are manifestly unreasonable. Certainly, consecutive sentences, which reflect a separate penalty for each life taken, are manifestly appropriate. However, maximizing each sentence is not. I would reverse and remand with directions to the trial court to reduce each sentence to fifty years, and affirm the sentences in all other respects.

SULLIVAN, J., concurs.